# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TANYA SOLORZANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   Case No. CIV-20-1273-F |
| | ) |
| AREPET EXPRESS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Tanya Solorzano (Solorzano) worked as a truck driver for defendant Arepet Express, LLC (Arepet) from January 11, 2019 until September 5, 2019. She initiated this action claiming she was subjected to employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. § 1101, *et seq.* Arepet has moved for summary judgment on Solorzano's sexual harassment and retaliatory discharge claims. Solorzano has moved for summary judgment on two of Arepet's alleged affirmative defenses. Upon consideration of the parties' submissions and applicable law, the court finds both motions should be denied.

I.

*Standard of Review*

Under Rule 56(a), Fed. R. Civ. P., summary judgment is proper if the record shows "'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Throupe v. University of Denver, 988 F.3d 1243, 1250 (10th Cir. 2021) (quoting Sanderson v. Wyo. Highway Patrol, 976 F.3d 1164, 1173 (10th Cir. 2020)). "A dispute is genuine 'if there is sufficient

evidence so that a rational trier of fact could resolve the issue either way.'" *Id*. "'In determining whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party.'" *Id*.

## II.

### *Background*

Solorzano alleges that during her employment, she was subjected to sexually harassing comments from a supervisor, Kevin Lakins (Lakins). She alleges that she reported Lakins' sexually harassing comments to her supervisor, Wes Sheppard (Sheppard), but no action was taken against Lakins. Solorzano alleges that after she reported Lakins' behavior to Sheppard, Lakins began retaliating against her by falsely and repeatedly reporting her for work safety violations. Solorzano reported Lakins' retaliatory conduct to Sheppard, but he failed to take any remedial action. Solorzano alleges that on September 5, 2019, after being again subjected to Lakins' retaliatory conduct, of which she complained to Sheppard, both she and Lakins were terminated by Sheppard.

## III.[1]

### *A. Sexual Harassment/Hostile Work Environment*

"Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" Sanderson, 976 F.3d at 1174 (quoting 42 U.S.C. § 2000e-2(a)(1); Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1134 (10th Cir. 2005)). "'[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.'" Sanderson, 976 F.3d at 1174 (quoting Chavez v. New Mexico, 397

---

[1] Because "[t]he OADA is analyzed similarly to Title VII claims," Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017), the court's analysis of the Title VII claims applies equally to Solorzano's OADA claims.

2

F.3d 826, 832 (10th Cir. 2005)). "To sustain a claim of hostile work environment under Title VII, 'a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.'" Sanderson, 976 F.3d at 1174 (quoting Medina, 413 F.3d at 1134).

Arepet does not challenge whether Solorzano can show the first element of her hostile work environment claim based upon her sex. Instead, it argues that Solorzano cannot demonstrate the second element because she cannot offer evidence that Lakins' alleged sexual comments were so severe or pervasive as to alter the terms or conditions of her employment. Specifically, it argues that Solorzano cannot demonstrate that Lakins' alleged sexual comments were objectively hostile or abusive.

"Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." Throupe, 988 F.3d at 1252 (citation omitted). Determining whether the workplace is an objectively hostile or abusive work environment is not "a mathematically precise test." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). In making the determination, the court looks to the "totality of the circumstances" and considers "such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Throupe, 988 F.3d at 1252 (quotation marks omitted). It is not enough that the plaintiff perceived the conduct to be severe or pervasive. Rather, the plaintiff must "'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" Id. (quoting Sanderson, 976 F.3d at 1176). "So, the run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff

3

of a Title VII hostile work environment claim." *Id.* (quotation marks omitted). "And a few isolated incidents of discriminatory conduct does not make the harassment pervasive." *Id.*

Under Tenth Circuit precedent, "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). "This is because what is important in a hostile environment claim is the *environment*, and gender-neutral harassment makes up an important part of the relevant work environment." Chavez, 397 F.3d at 833 (emphasis in original). "Conduct that appears gender-neutral in isolation may in fact be gender-based, but may appear so only when viewed in the context of other gender-based behavior." *Id.* (citation omitted).

Viewing the record as a whole and construing all reasonable inferences in Solorzano's favor, the court concludes that Solorzano has demonstrated a genuine issue of material fact regarding whether the alleged harassment was pervasive. Solorzano's evidence consists of more than a few isolated incidents of sexual comments, as argued by Arepet. Lakins repeatedly made unwelcome sexual flirtations and requests for dates to Solorzano. Doc. no. 49-14, at 10. And according to a male co-worker, Lakins made sexual comments to Solorzano "every day." Doc. no. 49-12, at 3. Lakins told Solorzano that "we don't get pretty women out here like you," "a pretty lady shouldn't be driving trucks," and "I know how to make a woman cum." Doc. no. 49-16, at 2. In addition, Lakin told Solorzano he was in love with her and questioned her about her sex life. He accused Solorzano of having sex with other male co-workers. *Id.* He told Solorzano on one occasion that he was upset because she had "chos[en] [a co-worker] over [him]." Doc. no. 49-11, at 14. On more than one occasion, he drooled all over her paperwork before handing it back

to her. Doc. no. 49-14, at 11; doc. 49-11, at 14. A male co-worker testified that Lakin would "wiggle his tongue out," tell Solorzano "I love you," comment on "her shape," and tell her how "he [wanted] to be with her." Doc. no. 49-12, at 3-4. That same male co-worker was also accused by Lakins of having sex with Solorzano and Lakins told him that he was going to make Solorzano's "job hard" because he wanted her to be with him instead of the co-worker. Doc. no. 49-12, at 4. Another male co-worker testified that Lakins commented about seeing Solorzano's "behind" or "her breasts" when she was changing clothes and Lakins' comments offended her. Doc. no. 49-13, at 5. Solorzano reported the sexual harassment to Sheppard multiple times, but he did not take any action against Lakins. Doc. no. 49-14, at 5-7; doc. no. 49-16, at 3. These will be matters for the jury to evaluate.

Further, after Solorzano reported the harassment to Sheppard, Lakins began falsely and repeatedly reporting her for violations of company policy. Doc. no. 49-16, at 3; 49-12, at 6. Lakins made numerous false reports that Solorzano was not wearing appropriate safety clothing. Doc. no. 49-16, at 3. Lakins reported Solorzano multiple times per month from April until September 2019. *Id.* at 3. Solorzano's co-workers testified that Solorzano was singled out by Lakins. Doc. no. 49-12, at 11; doc. no. 49-13, at 13. Sheppard listened to Solorzano's complaints as to Lakins' conduct but never took any corrective action. At least once, Sheppard told Solorzano that the matter was simply a "personal dispute" and she needed to find a way "to sort it out herself." Doc. no. 49-16, at 3. These, too, will be matters for the jury to evaluate.

The court concludes that Solorzano has marshaled sufficient evidence, viewed in her favor, of objectively hostile or abusive work environment to overcome summary judgment. In the court's view, a rational jury could find her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently pervasive to alter her conditions of employment. Thus, the court

5

concludes that Solorzano's sexual harassment claim (under Title VII and OADA) is one for the jury.

## B. Retaliation

Title VII also prohibits an employer from "discriminat[ing against any of his [or her] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." Sanderson, 976 F.3d at 1170. Where, as in this case, there is no direct evidence of retaliation, the court analyzes Solorzano's retaliation claim under the McDonnell Douglas burden-shifting framework.[2] Following that framework, Solorzano must first present a prima facie case of retaliation, which then shifts the burden to Arepet to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. Stover v. Martinez, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (citation omitted). If Arepet provides a legitimate, nondiscriminatory justification for the action, the burden shifts back to Solorzano to provide evidence showing that Arepet's proffered reason is a pretext for retaliation. *Id*. at 1071. Solorzano may demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally them unworthy of credence." Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000) (internal quotation marks and citation omitted).

To present a prima facie case of retaliation, Solorzano must show "(1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 638 (10th Cir. 2012) (internal quotation marks and citation omitted). Arepet only challenges Solorzano's ability

---

[2] *See*, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

6

to make a showing of the first element. Arepet maintains that Solorzano did not complain to Sheppard about Lakins' alleged sexual harassment. However, viewing the record in her favor, Solorzano raises a genuine issue of material fact as to whether she did complain about Lakins' sexual harassment to Sheppard.

In its motion, Arepet has satisfied the burden of producing legitimate, nondiscriminatory justification for terminating Solorzano. *See*, E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191 (10th Cir. 2000) (employer burden "is one of production, not one of persuasion."). Arepet asserts that its "only Oklahoma client, EOG, stated that Solorzano and Lakins had caused too many well site disruptions, and it wanted them both off their sites." Doc. no. 46 at 8. Arepet relies upon Sheppard's testimony in support of its assertion. Doc. no. 46-2, at 89-90; 130.

Because Arepet has proffered a legitimate, nondiscriminatory justification for Solorzano's termination, Solorzano must provide evidence that Arepet's proffered reason is a pretext for retaliation. The court concludes that she has provided sufficient evidence to raise a genuine issue of material fact, for consideration by the jury, regarding pretext. Based upon the proffered evidence, viewed in Solorzano's favor, a reasonable jury could conclude that Sheppard seized on EOG's ban of Solorzano from the well sites as an opportunity to terminate her for her protected conduct. The court concludes that Solorzano's retaliation claim (under Title VII and OADA) is one for the jury.

IV.

Solorzano has moved for summary judgment on two of Arepet's alleged affirmative defenses. First, she has moved for summary judgment on the

Faragher/Ellerth[3] affirmative defense relating to an employer's vicarious liability for a supervisor's sexually harassing behavior. Second, she has moved for summary judgment on good faith compliance standard relating to punitive damages.

### A. Faragher/Ellerth

Under Faragher/Ellerth, an employer has an affirmative defense to vicarious liability for actionable sexual harassment perpetrated by a supervisor (where the harassment did not culminate in a tangible employment action) if the employer proves two elements: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Helm v. Kansas, 656 F.3d 1277, 1285 (10th Cir. 2011) (internal quotation marks and citation omitted). If the employer fails to prove either element (by a preponderance of the evidence), the affirmative defense fails. Kramer v. Wasatch County Sheriff's Office, 743 F.3d 726, 746 (10th Cir. 2014).

Solorzano challenges Arepet's ability to prove the first element—that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. As for preventing sexual harassment, she asserts that the employee handbook given to Arepet's employees did not expressly state that Arepet prohibited sexual harassment. In addition, she asserts that Arepet provided no sexual harassment training or training on how to respond to reports of sexual harassment to its employees, including supervisors. As for correcting sexual harassment, Solorzano argues that the evidence demonstrates Arepet did not correct promptly any of Lakins' sexually harassing behavior.

---

[3] See, Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998).

Solorzano properly recognizes the first element of the Faragher/Ellerth affirmative defense incorporates both preventive and corrective requirements.  *See*, Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 653 (10th Cir. 2013).  As for the former requirement, an employer "acts reasonably as a matter of law to prevent harassment if it adopted valid sexual harassment policies and distributed those policies to employees via employee handbooks, *even if it either provided no sexual harassment training or provided training only to managers*."  *Id*. (quotation marks and brackets omitted) (emphasis added); *see also*, Murphy v. Pagosa Lakes Property Owner's Association, 2015 WL 1816573, at * 11 (D. Colo. April 20, 2015) ("[W]here an employer has a valid, disseminated sexual harassment policy, it is not clear that anti-discrimination training is required.").  Thus, an employer can satisfy the prevention requirement by showing the existence and dissemination of a valid sexual harassment policy.  *Id*.; *see also*, Helm, 656 F.3d at 1288.

Here, the record shows that at the commencement of her employment, Solorzano received an employee handbook which contained a sexual harassment policy and complaint procedure.  Although Solorzano purports to challenge the policy's validity because it did not expressly state that Arepet prohibited sexual harassment under that policy,[4] the court is satisfied that the policy is valid as to Arepet.  The record reveals that Arepet outsourced all human resources services to Covenant Services, Inc. (Covenant), a professional employer organization, and because of their contractual relationship, Covenant was considered a co-employer of Solorzano and other Arepet employees.  Doc. no. 45-3.[5]  The employee handbook described the co-employment relationship.  While the employee handbook only

---

[4] In her reply, Solorzano raises additional arguments challenging the adequacy of the policy.  The court declines to address arguments raised for the first time in reply.

[5] The court notes that Covenant was also named as a defendant to this action but was voluntarily dismissed upon stipulation of the parties.  *See*, doc. no. 24.

9

mentioned Covenant in explaining the "Sexual Harassment Policy," the employee handbook also stated:

> Harassment Prevention
>
> Covenant Services, Inc. expressly prohibits any form of unlawful harassment based on . . . sex . . . . Improper interference with the ability of any employees to perform their expected job duties is not tolerated, and if unlawful harassment occurs, Covenant Services, Inc. will take decisive and appropriate action, including termination of employment. This policy applies to Covenant Services, Inc.['s] employees, supervisors, vendors, contractors and AREPET EXPRESS companies.

Doc. no. 45-3. Although the "Sexual Harassment Policy" that followed only stated that Covenant prohibited sexual harassment, the court concludes that based upon the text, structure and overall import of the employee handbook, Arepet also prohibited harassment based upon sex and the Sexual Harassment Policy, although not mentioning Arepet, applied to the company as well as to Covenant. Because the record shows that Arepet adopted a valid sexual harassment policy and the policy which was in the employee handbook was disseminated to Solorzano, the court concludes that summary judgment is not appropriate as to the prevention requirement.

Turning to the corrective requirement, the court concludes that Arepet has proffered sufficient evidence to raise a genuine issue of material fact to overcome summary judgment. The evidence, viewed in Arepet's favor, shows that Solorzano never reported any sexually harassing behavior by Lakins. Given that evidence, the court concludes that summary judgment is not appropriate as to the corrective requirement.

In sum, the court concludes that Solorzano is not entitled to summary judgment on the Faragher/Ellerth affirmative defense alleged by Arepet.

## *B. Good Faith*

For violations of Title VII, a plaintiff may be awarded punitive damages under certain circumstances. In Kolstad v. American Dental Association, 527 U.S. 526 (1999), the Supreme Court determined that an employer may be held vicariously liable for a punitive damage award for the intentionally discriminatory conduct of its employee, where the employee served the employer in a managerial capacity, committed the intentional discrimination while acting within the scope of employment, and the employer did not engage in good faith efforts to comply with federal law. *Id*. at 545-46. Such liability, according to the Court, may not be imputed when the managerial agent's actions were contrary to the employer's good faith efforts to comply with Title VII. *Id*. at 544.

The Tenth Circuit has "held that *Kolstad's* good-faith-compliance standard requires an employer to at least (1) adopt anti-discrimination policies, (2) make a good faith effort to educate its employees about these policies and Title VII prohibitions, and (3) make good faith efforts to enforce an anti-discriminatory policy." Zisumbo v. Ogden Regional Medical Center, 801 F.3d 1185, 1201-02 (10th Cir. 2015).

In a footnote to her motion, Solorzano, relying upon McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1139 (10th Cir. 2006), states "the Tenth Circuit has not yet decided whether this so-called [Kolstad] defense represents an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance with Title VII." Doc. no. 45, at 9 (quotation marks omitted). Relying upon district court cases in the Tenth Circuit (Kansas and New Mexico), Solorzano argues it is an affirmative defense that defendant has the burden to prove.

In Zisumbo, a more recent case, the Tenth Circuit, without specifically addressing the issue, stated "[plaintiff] must show that [defendant]—not just its

11

managerial employees—failed to make good faith efforts to comply with Title VII." Zisumbo, 801 F.3d at 1202. Without developed argument on the issue by the parties, the court, for purposes of summary judgment, finds that Solorzano must show Arepet failed to make good faith efforts to comply with Title VII. Because the record, viewed in Arepet's favor, shows a genuine issue of material fact as to whether Solorzano reported the sexually harassing behavior of Lakins, the court concludes that Solorzano cannot establish that there is an absence of a genuine issue of material fact and that she is entitled to judgment as a matter of law that Arepet did not make good faith efforts to enforce the sexual harassment policy. Consequently, the court concludes that Solorzano is not entitled to summary judgment on the issue of Arepet's good faith efforts to comply with Title VII.

V.

Based upon the foregoing, Defendant Arepet Express, LLC's Motion for Summary Judgment (doc. no. 46) and Plaintiff's Motion for Summary Judgment (doc. no. 45) are **DENIED**.

IT IS SO ORDERED this 8th day of March, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1273p011.docx